535 S.E.2d 131

Ex parte J.M. SMITH CORPORATION, Petitioner.

In re Greenwood Petroleum Company, Inc., Respondent,

v.

Thomas D. Wingard and all personal property and fixtures located at Westside Pharmacy, Defendant.

No. 25169.

Supreme Court of South Carolina.

Heard Jan. 5, 2000.

Decided July 10, 2000.

Rehearing Denied Aug. 7, 2000.

Judson K. Chapin, III, of Greenville, for petitioner.

Charles M. Watson, Jr., of Watson Law Firm, of Greenwood, for respondent.

Lloyd I. Hendricks, of Columbia, and Philip T. Lacy, of Columbia, for Amicus Curiae South Carolina Bankers Association.

BURNETT, Justice:

This case concerns a priority dispute between a perfected security interest and a landlord's distress lien. The Court of Appeals held the landlord's lien took priority over the prior perfected security interest. *Greenwood Petroleum Co. v. Wingard (Ex parte J.M. Smith Corp.)*, 330 S.C. 479, 498 S.E.2d 908 (Ct.App.1998). We reverse.

## FACTS

The essential facts of this case are not in dispute. Thomas and Gloria Wingard operated Westside Pharmacy on premises leased from Respondent. Petitioner has a perfected security interest in all the pharmacy's inventory, proceeds, accounts, files, fixtures, and equipment, securing a debt of $64,056.72. The Wingards filed for bankruptcy in December 1995 and the pharmacy's lease was terminated as part of that case. The Wingards became holdover tenants and respondent, the landlord, levied for distress pursuant to S.C.Code Ann. §§ 27–39–210 through –360 (1976) and seized property subject to petitioner's security interest to collect $12,000 in back rent.

Petitioner responded and asserted it held a senior security interest in the seized property. The magistrate found the landlord was entitled to distrain property owned by the tenant despite petitioner's security interest. The circuit court and Court of Appeals affirmed. *Greenwood Petroleum Co. v. Wingard (Ex parte J.M. Smith Corp.)*, 330 S.C. 479, 498 S.E.2d 908 (Ct.App.1998). This Court granted certiorari to answer the following question:

Did the Court of Appeals err in holding that a landlord's lien created by distraint takes priority over a prior security interest perfected under the UCC?

## DISCUSSION

■ The Court of Appeals held a landlord's lien takes priority over a prior perfected security interest. It found as a threshold matter that the Uniform Commercial Code (UCC) was inapplicable to this case. It noted S.C.Code Ann. § 27–39–260 (1976), which formerly established a priority rule for such disputes, was repealed by the General Assembly in 1988. It then looked to S.C.Code Ann. § 27–39–250 (Supp.1998), concerning distraint of property of others upon leased premises, and found "no indication that a landlord's distress power is limited by the existence of a perfected security interest in the distressed property." *Ex parte J.M. Smith Corp.*, 330 S.C. at 482, 498 S.E.2d at 910. Citing *Tolemac, Inc. v. United Trading, Inc.*, 326 S.C. 103, 484 S.E.2d 593 (1997), the Court of Appeals reasoned "[t]he legislature intended for a landlord to be able to distrain the property of a third party, even though a third party holds unencumbered, complete ownership

of the property." 330 S.C. at 482, 498 S.E.2d at 910. Finding "a secured creditor sits in the same posture as a third party under § 27–39–250," the court held the landlord took the distrained property free of petitioner's perfected security interest. *Id.* at 482–83, 498 S.E.2d at 910. We disagree with both the reasoning and result of the Court of Appeals' opinion.

The threshold problem arises because Article 9 of the UCC specifically excludes landlords' liens from coverage. S.C.Code Ann. § 36–9–104(b) (1976). Other state courts have resolved priority disputes between landlords' liens and perfected security interests in a variety of ways. *See generally,* Annotation, *Secured Transactions: Priority as Between Statutory Landlord's Lien and Security Interest Perfected in Accordance with the Uniform Commercial Code,* 99 A.L.R.3d 1006 (1980). A majority of courts addressing the issue have applied non-UCC or pre-UCC law to resolve these disputes, applying either a rule of absolute priority to one of the parties, depending on the rule in effect, or following a rule of "first in time, first in right." *Id.* A minority of courts have applied Article 9 rules to determine priority, despite the exclusion of landlords' liens from Article 9's scope. The reasoning is that landlords' liens are excluded because Article 9 is concerned with consensual liens and landlords' liens arise by operation of law. However, the creation of a lien outside the UCC does not necessarily mean the UCC is inapplicable to determine its priority. *See* S.C.Code Ann. § 36–9–301(1)(b) (Supp.1998) (resolving priority disputes between secured creditors and those who acquire a lien by "attachment, levy, or the like"). Courts which apply Article 9 to cases such as this read the UCC broadly to govern priority among competing liens, even when one of the liens arose outside Article 9.

We need not determine which of the above approaches to employ because the legislature has already made clear its intent that UCC priority rules resolve disputes such as this. When the General Assembly repealed § 27–39–260 in 1988, it expressly replaced a non-UCC rule of priority with the UCC rule. *See* Act No. 494, 1988 S.C.Acts 4519–20 (quoted below). The former, non-UCC rule had been problematic in several respects. Although it purported to grant priority to secured creditors, loopholes in the statute sometimes permitted landlords to prevail over prior secured creditors. For example, the wording of the statute gave a landlord priority over a

secured creditor if the lease had commenced or the property was brought upon the leased premises before the creditor recorded its interest. *See* S.C.Code § 27–39–260 (1976) (repealed 1988). This was true even if the creditor perfected its interest before the landlord's lien attached [1] and even if the landlord had actual knowledge of the prior perfected security interest. *See Frady v. Smith,* 247 S.C. 353, 147 S.E.2d 412 (1966).

In 1988, the General Assembly repealed § 27–39–260 with this explanation:

> The net effect [of § 27–39–260] is that a large number of fully perfected nonpurchase money security interests are potentially subordinate to distress liens. This is inconsistent with the priority rules in the UCC. Section 36–9–301(1) states that a perfected security interest takes priority over any lien creditor unless the creditor obtains a lien before the security interest is perfected; and a landlord cannot qualify as a lien creditor until after distress and levy.

Act No. 494, 1988 S.C.Acts 4519–20. *See also* S.C.Code Ann. § 36–9–313 (Supp.1998) (S.C. Reporter's Comments, n. 2) ("As is pointed out ... there was a conflict between the priority rules in the UCC and Sections 27–39–50 and 27–39–260 of the 1976 South Carolina Code which dealt with rights of landlords vis-a-vis persons claiming interests in chattels located on leased real estate. Sections 27–39–50 and 27–39–260 have therefore been repealed because if not, a lessor of real estate would have certain rights under these statutes that might undercut the priority given a fixture financer under Section 9–313.") The Reporter's Notes make very clear that in repealing § 27–39–260, the General Assembly did not intend to leave courts without a rule for determining priority, but to defer in all cases to UCC priority rules.

This intent was implicitly recognized by this Court in *Oxford Finance Co. v. Burgess,* 303 S.C. 534, 402 S.E.2d 480 (1991). In *Oxford Finance,* the tenants leased a lot for a mobile home on November 13, 1986. On November 15, the

---

**1.** A landlord's right to distrain a tenant's property arises automatically when the lease commences, but an actual lien does not attach until the tenant defaults and the landlord levies for distress. *Burnett v. Boukedes,* 240 S.C. 144, 125 S.E.2d 10 (1962). This timing gap served to exacerbate problems enforcing an already troublesome rule.

tenants purchased a mobile home and executed a purchase money note and security agreement, granting the seller a security interest in the mobile home. The security interest was perfected on March 27, 1987. In 1989, the tenants vacated the premises, defaulted on the purchase money note, and became delinquent on rent payments to the landlord. A dispute then arose between the landlord and the secured creditor for possession of the mobile home. The landlord relied on § 27–39–260, which had been repealed effective January 1, 1989. The Court noted that while § 27–39–260 may have given the landlord some rights to the mobile home, its repeal operated retrospectively. *Id.* at 537–38, 402 S.E.2d at 481. The Court therefore affirmed judgment for the secured creditor.

Although we did not discuss priority rules in *Oxford Finance*, we implied that the repeal of § 27–39–260 eliminated the possibility of a landlord claiming priority over a prior secured creditor. This result is not inconsistent with *Tolemac, Inc. v. United Trading, Inc.*, 326 S.C. 103, 484 S.E.2d 593 (1997), relied upon by the Court of Appeals. *Tolemac* held that landlords can distrain property belonging to third parties located on the leased premises. *Id.* at 106, 484 S.E.2d at 595. The purpose of the *Tolemac* rule is fraud prevention. If property belonging to third parties is not subject to distraint, a delinquent tenant "is likely to become rapidly bereft of all possessions." James Johnson, Note, *Get in Line, the Line Forms at the Door: A Landlord's Lien for Distraint Enjoys Seniority Over Prior Perfected Security Interests in South Carolina*, 50 S.C.L.Rev. 1051, 1060 (1999). The concerns that require the rule in *Tolemac* do not exist where there is a publicly recorded security interest, giving the landlord notice of exactly what property on the premises is unavailable to distrain. The Court of Appeals erred in equating third party owners with perfected secured creditors, when the two differ in very significant respects. First, perfected secured creditors have taken every step possible to protect their interests to the full extent provided by law. Second, perfected secured creditors have given public notice of their interests. These features of security interests entitle them to heightened protection. *Tolemac* has no application in a priority dispute between a perfected secured creditor and a landlord.

 Applying UCC priority rules, a secured party who perfects its security interest before a creditor acquires a lien upon the collateral by "attachment, levy, or the like" has priority over the lien creditor. S.C.Code Ann. § 36–9–301(1)(b) & (3) (Supp.1998). A landlord does not become a lien creditor until it levies for distress. *Burnett v. Boukedes*, 240 S.C. 144, 125 S.E.2d 10 (1962). Therefore, petitioner's prior perfected security interest has priority over respondent's lien.

## CONCLUSION

The result reached by the Court of Appeals is exactly what the legislature sought to avoid when it repealed § 27–39–260: "fully perfected nonpurchase money security interests ... subordinate[d] to distress liens." Act No. 494, 1988 S.C.Acts 4519–20. In repealing § 27–39–260, the General Assembly made very clear its intent that UCC priority rules replace the repealed statute. The Court of Appeals erred in finding UCC priority rules do not govern priority disputes between secured creditors and landlords, and in treating secured creditors as the equivalent of third party property owners.

**REVERSED.**

FINNEY, C.J., TOAL, J., and Acting Justices C. TOLBERT GOOLSBY, Jr. and GEORGE T. GREGORY, Jr., concur.